**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**KENNY HALFACRE,**
**ADC #84410**                                                                                      **PLAINTIFF**

**V.**                               **CASE NO. 5:13CV00167 BSM/BD**

**RANDY WATSON, et al.**                                                          **DEFENDANTS**

<u>**RECOMMENDED DISPOSITION**</u>

**I.      <u>Procedures for Filing Objections</u>:**

This Recommended Disposition ("Recommendation") has been sent to Chief

United States District Judge Brian S. Miller.  Mr. Halfacre–or any party–may file written

objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the

United States District Court Clerk within fourteen (14) days of this Recommendation.  A

copy will be furnished to the opposing party.

If no objections are filed, Judge Miller can adopt this Recommendation without

independently reviewing all of the evidence in the record.  By not objecting, you may also

waive any right to appeal questions of fact.

Mail your objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.   Discussion:

Plaintiff Kenny Halfacre, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit *pro se* under 42 U.S.C. § 1983, alleging that Defendant Bealer violated his eighth amendment rights by constantly exposing him to light that caused headaches and sleep deprivation.[1]  Defendant Bealer has now moved for summary judgment on Mr. Halfacre's claims against him.  (Docket entry #21)

Based on the evidence presented, the Court recommends that Defendant Bealer's motion for summary judgment (#21) be GRANTED, and that Mr. Halfacre's claims be DISMISSED, with prejudice.[2]

---

[1] Although Mr. Halfacre originally named four other individuals as Defendants, he later moved to voluntarily dismiss his claims against those Defendants.  The Court granted that motion.  (#25)

[2] Defendant Bealer also argues that he is entitled to both sovereign and qualified immunity, but because the Court finds that Mr. Halfacre's claims fail a matter of law, the Court will not address Defendant Bealer's immunity arguments in this Recommendation.

Case 5:13-cv-00167-BSM   Document 32   Filed 04/24/14   Page 3 of 8


III.   **Analysis**:

A.     Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). A moving party must first present evidence that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must come forward with evidence showing that there is a genuine dispute that must be decided at a trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If a plaintiff does not submit enough proof to establish a necessary element of a claim, the moving party is entitled to judgment on that claim. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

B.     Eighth Amendment Claim

According to Defendant Bealer, at 10:30 p.m. each night in the Varner Unit, the lights located directly above the inmate-bunks are turned off so that the inmates can rest without constant illumination from the overhead lights. (#21-1 at p.2) The lights in the day room, hallway, and bathroom, however, remain on 24-hours a day so that the inmates can be continuously monitored. (#21-1 at p.2)

According to Mr. Halfacre, prior to December 13, 2012, the only lights that were left on in 21 barracks at the Varner Unit after 10:30 p.m. were three bathroom lights. (#21-2 at p.4)  On December 13, 2012, Sergeant Jones entered the barracks around midnight and had the lights in the day room turned on.  (#21-2 at pp.4, 7)  Mr. Halfacre testified that Sergeant Jones initially turned on ten lights, but that she later turned off half of them.  (#21-2 at p.9)  Mr. Halfacre does not dispute that this allowed the officers located in the control booth a better view of the inmates in the barracks.  (#21-2 at p.8)

In January 2013, Mr. Halfacre explains, Defendant Bealer changed the light bulbs for two sets of light fixtures in the day room.  (#21-2 at p.15)  Mr. Halfacre testified that Defendant Bealer "wired" the light bulbs so that they could not be turned off.  (#21-2 at pp.15-16)  Mr. Halfacre believes that the wattage in the light bulbs in the day room was too high.  (#21-2 at p.16)  He complains that the lights in the day room remained on from January 29, 2013, until the date that he filed this lawsuit, May 31, 2013.  (#21-2 at p.18)  Because of the constant illumination, Mr. Halfacre alleges that he could not sleep and that he suffered from high blood pressure as a result.   (#21-2 at p.27)

To establish that conditions of confinement violate the Eighth Amendment, a prisoner must show that the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  That said, "[a]n official's failure

to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id*. at 838. Moreover, a prison official cannot be held liable under § 1983 for negligent or even grossly negligent conduct. *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002). Rather, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993).

Here, Mr. Halfacre complains that the lighting in the day room caused him to suffer sleep deprivation. He alleges that when he discussed the lighting issue with Defendant Bealer, Defendant Bealer allegedly told Mr. Halfacre that he was not concerned about any impact the lighting had on the inmates' ability to sleep. (#21-2 at p.44) In contrast, Defendant Bealer testified that he was not aware of any physical or psychological problems caused by the illumination of the lights in the day room. (#21-1 at p.3) Defendant Bealer also explained that he never received notice from any medical or mental health staff members that the day room lights could have an adverse effect on the inmates, and that the lights had to be turned on for security purposes. (#21-1 at p.3) Based on the record, there is a dispute as to whether Defendant Bealer was aware that the lights in question caused Mr. Halfacre to suffer sleep deprivation. Even assuming that Defendant Bealer was aware of Mr. Halfacre's sleep disruption, however, his claim still fails.

5

First, there is no question that security officers must be able to see into the inmates' barracks 24-hours a day.  Although Mr. Halfacre disputes how safe the Varner Unit barracks actually are, he does not dispute this fact.  In his deposition, Mr. Halfacre specifically stated: "I fully understand the security issue.  I don't have any problem with that." (#21-2 at p.7)  Mr. Halfacre simply disagrees that the lights (as well as the wattage of the lights) that Defendant Bealer chose to leave on were necessary.

Further, Defendant Bealer cannot be held liable for even grossly negligent conduct.  Assuming that Defendant Bealer was aware that the lights in question were affecting Mr. Halfacre's sleep, Mr. Halfacre fails to present any evidence that Defendant Bealer was aware that Mr. Halfacre suffered from high blood pressure; nor has he presented any evidence that Defendant Belaer was aware that the lighting in question would adversely affect Mr. Halfacre's blood pressure.[3]

It is disputed whether Mr. Halfacre suffered from high blood pressure during the time period at issue but, assuming he did, Mr. Halfacre has failed to offer any proof that the lights in the day room caused an increase in his blood pressure.  Importantly, Mr. Halfacre testified that, because he does not have a job within the ADC, he is permitted to sleep during the day.  (#21-2 at pp.25, 47-48)  He explains that his blood pressure

---

[3]  The Court notes that Mr. Halfacre mentions his blood pressure in one of his fully-exhausted grievances.  (#21-3 at pp.1-2)  However, there is no evidence that Defendant Bealer was ever made aware of Mr. Halfacre's medical condition; nor was there any evidence presented that the illumination in question actually affected Mr. Halfacre's condition.

decreases when he is able to rest.  This fact undercuts Mr. Halfacre's claim that he has suffered an actual injury as a result of the lighting.

While Mr. Halfacre may be correct that the use of a lower-watt nightlight in the light fixtures in the day room could resolve the issue raised in this lawsuit, the existence of an alternative solution does not create a genuine issue of material fact regarding Defendant Bealer's conduct.  Because Mr. Halfacre has failed to present proof of any serious medical consequences caused by the lights, and because he has not come forward with proof of any deliberate indifference to such harm, his claim fails as a matter of law. See *King v. Frank*, 371 F. Supp. 2d 977, 1004–1005 (W.D. Wis. 2005) (ruling that a constant low-level illumination of prisoner's cell during sleep hours does not rise to the level of an Eighth Amendment claim, where health workers found no serious medical consequences from the lighting; plaintiff demonstrated neither "substantial risk of serious harm" nor deliberate indifference to that harm).

C.    ADC Policy and Procedure

To the extent that Mr. Halfacre claims that his constitutional rights were violated because Defendant Bealer failed to follow ADC policy or procedure, that claim fails to rise to a constitutional level.  *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996).

IV.   **Conclusion**:

The Court recommends that the motion for summary judgment (#21) be GRANTED, and that Mr. Halfacre's claims against Defendant Bealer be DISMISSED, with prejudice.

DATED this 24th day of April, 2014.

_____
UNITED STATES MAGISTRATE JUDGE